### ROBINSON v. JOHNSON.

(Circuit Court of Appeals, Eighth Circuit. January 11, 1917.)

No. 4538.

1. LIBEL AND SLANDER ⬳7(1)—COMMUNICATIONS "LIBELOUS PER SE."

A false and unprivileged publication, which tends to impair the social standing of a man, to make him contemptible or ridiculous, or to deprive him of the confidence, good will, or esteem of his fellow men, is "libelous per se," and damage is implied, and therefore a false statement that plaintiff, while a special Indian officer in the service of the government, had private relations with cattle and water thieves, protected joint keepers and murderers among the Indians, and had relations with unsophisticated Indian women, that he had a record as a jailbird, that he was a lying, thieving, blackmailing, moral reprobate, and that he had misused government funds in defending an Indian, etc., is libelous per se, many of the charges being indictable.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 17, 23.

For other definitions, see Words and Phrases, First and Second Series, Libel.]

2. LIBEL AND SLANDER ⬳39—PRIVILEGE—PUBLICATION.

To be privileged as a public record, an entry, writing, or document must have been made by a public officer in the line of his official duty.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 124–126.]

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. LIBEL AND SLANDER ⊜═39—PRIVILEGE—PUBLIC DOCUMENTS.

Where defendant, in a publication attacking the character of a former special Indian officer, published only excerpts from a letter of the Assistant Secretary of the Interior, setting forth the reasons for the officer's dismissal, but did not print any part of the record tending to justify the conduct of the officer and made false and defamatory charges and comments, the publication is not privileged; the privilege of publication by a private person of official proceedings requiring the publication to be a fair and accurate account of the record or proceedings.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 124–126.]

4. LIBEL AND SLANDER ⊜═104(1)—EVIDENCE—ADMISSIBILITY.

Where defendant claimed that the publication was privileged, because it contained excerpts from a letter written by the Assistant Secretary of the Interior explaining plaintiff's dismissal as an Indian agent, reports from the Commissioner of Indian Affairs, immediately preceding the incident, which were highly commendatory of plaintiff's discretion and efficiency, were admissible in evidence, defendant having pleaded good faith and a careful investigation of the facts, for it tended to show that defendant, with an evil motive, picked out for publication only that part of the record which served his purpose.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 284, 291.]

5. LIBEL AND SLANDER ⊜═110(1)—PUBLICATION—EVIDENCE—ADMISSIBILITY.

Defendant, in a publication, charged that plaintiff, while special Indian officer, was guilty of subornation of perjury, publishing a letter of the Assistant Secretary of the Interior which assigned such reason as ground for plaintiff's dismissal. A trial was had on an answer asserting the truth of the charge. *Held* that, as defendant at all times asserted the truth of his charge, evidence of the reversal of the Assistant Secretary's determination prior to the filing of the answer was admissible to disprove the contention that plaintiff had been guilty of subornation of perjury.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 307–314.]

Carland, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by William E. Johnson against U. G. Robinson. There was a judgment for plaintiff, and defendant appeals. Affirmed.

C. B. Williams, of St. Louis, Mo. (R. P. Williams, of St. Louis, Mo., on the brief), for plaintiff in error.

John F. Green, of St. Louis, Mo. (Judson, Green & Henry, of St. Louis, Mo., on the brief), for defendant in error.

Before HOOK and CARLAND, Circuit Judges, and MUNGER, District Judge.

HOOK, Circuit Judge. William E. Johnson sued U. G. Robinson for libel and recovered a judgment. For some years prior to his resignation in September, 1911, the plaintiff was in the service of the Indian Bureau of the Interior Department as chief special officer for the suppression of liquor traffic among the Indians. At the time of the libelous publication he was in the employment of an organization known as the "Anti-Saloon League." The defendant was the editor

⊜═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and publisher of the National Issue, a monthly paper devoted to the cause of national prohibition. The article complained of was published by defendant in October, 1913. It charged the plaintiff directly or by necessary inference with having a "record for theft, attempted blackmail, and gross immorality in his early life in college"; that he "was naturally vicious and devoid of principle"; that as a real estate agent "he swindled and defrauded"; that as an editor of a paper he had conducted "a filth-dispensing, blackmailing sheet so vile that the government suppressed it"; that while a special Indian officer in the service of the government he had private relations with cattle and water thieves, "protected joint keepers and murderers among the Indians," had "relations with unsophisticated Indian women," and had been sued for damages because of them; that he had a "record as a jailbird"; that he was a "lying, thieving, blackmailing, moral reprobate"; that he had a "record with a certain grass widow," in whose affections he had supplanted another man, and took her with him into several states, "while he left his wife in the East, until government officials put a stop to the affair"; that he had "relations" with another unmarried woman, whom the government had discharged from the service and plaintiff re-employed "in violation of a department order"; that information at hand showed "their relations to, and the probable reason for, the murder" of a certain Indian by another, and "how desperate a defense they made for their tool, rather than risk the divulging of certain secrets he had incidentally or accidentally learned"; that defendant wanted a chance to show how the murderer had forced the plaintiff and the unmarried woman above mentioned "to rush to his defense with money and false testimony." As an explanation of the meaning of this last charge the article set forth excerpts from a letter written to the plaintiff by the First Assistant Secretary of the Interior, as follows:

"You were willing to set up in a court of justice another defense for Cruz which you knew to be untrue, and you spent altogether some $1,200 of government money in getting together a fictitious defense." "The defense which you were preparing to set up was an absolutely false one." * * * "It therefore follows that your payment of government funds for this purpose was a misuse of such funds." * * * "You were totally unfit to hold any position involving the exercise of discretion." * . * * "To be guilty of moral cowardice in an extreme measure." . * * * "I, too, felt that your immediate discharge was fully warranted."

The defenses set up in defendant's answer were that the charges in the article and every part of them were true, and that the publication of those relating to the letter of the Assistant Secretary of the Interior was privileged, for the reason that the letter was a public record and defendant acted without malice after a full investigation of the facts. Aside from this letter and what it covered there was practically no attempt at the trial to justify the publication by showing the truth of the charges.

[1] On the face of the petition the article was manifestly libelous. A false and unprivileged publication, which tends to impair the social standing of a man, to make him contemptible or ridiculous, or to deprive him of the confidence, good will, or esteem of his fellow

men, is libelous, and damage is implied. Van Wiginton v. Pulitzer Pub. Co., 218 Fed. 795, 134 C. C. A. 483. Some of the charges in the article before us were of the commission of indictable crimes, all of them of a most serious character. Much less would have been actionable per se. Peck v. Tribune Co., 214 U. S. 185, 29 Sup. Ct. 554, 53 L. Ed. 960, 16 Ann. Cas. 1075.

[2, 3] It is urged that the letter of the Assistant Secretary of the Interior was a public record, and that the jury should have been instructed that defendant's publication of the excerpts from it was privileged. To be a public record, an entry, writing, or document must be what the term implies. It must have been made in the line of official duty. It is not enough that he who made it happened to be an official, nor that it was lodged among the records of a public office. We shall assume, however, the status claimed, though there was evidence to the contrary. The privilege of participants in judicial, legislative, and administrative proceedings should not be confused with the privilege of private individuals, who make them the subject of publication to the detriment of others. There are well-defined limitations upon the latter. The privilege of publication by newspaper or otherwise by an unofficial person requires that the article be a fair and accurate account or transcript of the record or proceeding. If they be distorted, or but partly set forth, to give an evil aspect, or are accompanied by false and defamatory comments, there is no protection. Dorr v. United States, 195 U. S. 138, 24 Sup. Ct. 808, 49 L. Ed. 128, 1 Ann. Cas. 697, is quite in point. There an unfair newspaper report of an incident at a trial in court contained head lines in large type:

"Traitor, Seducer, and Perjurer. Sensational Allegations against Commissioner Legarda," etc.

It was held that the publication was not privileged. The case arose under a Philippine libel act which, however, did not change the common law in the particular under consideration here. The instruction requested by defendant in the case before us was properly refused. It was for an absolute privilege and immunity, without the qualifying conditions made necessary by the evidence in the case.

[4] Complaint is made of the admission in evidence of certain records of the Interior Department. They were reports of the Commissioner of Indian Affairs for the years 1907–1910, immediately preceding the year in which the letter of the Assistant Secretary was written. They were commendatory of the plaintiff's discretion and efficiency as an official and his devotion to public duty. Without more, the evidence was admissible on the question of privilege. It tended to show that defendant, who pleaded good faith and a careful investigation of the facts, had with an evil motive picked out for publication the part of a record which served his purpose.

[5] Complaint is also made of the admission in evidence of a record of the department showing a reversal of the prior action shown by the letter of the Assistant Secretary. The particular objection was that the reversal occurred after the libel, and after the action was

brought. It may be observed here that defendant did not confine his publication to an ordinary recital of the letter of the Assistant Secretary; but he himself made the positive charge of subornation of perjury under specially degrading circumstances. The letter of the Assistant Secretary was set out, as he said, to show what he meant. The defendant made the libelous charge and used the letter to explain it. Again the trial proceeded upon an amended answer, which defendant filed after the department had reversed its prior action and exculpated the plaintiff. In this answer the defendant asserted in detail and in the present tense the truth of his charges. And when the evidence in question was offered and received, he did not seek to qualify its effect by objection or request for instruction, but insisted upon its absolute exclusion. In effect he still maintained that his charge of subornation of perjury against the plaintiff was true, after the record foundation for it, assuming it had one, had conclusively disappeared. He did not say he was ignorant of the later record, nor that he was surprised by the evidence. He stuck to his post to the end, still maintaining that the plaintiff was guilty as he charged him to be. We do not think error was committed in this particular. There is nothing else in the case that requires mention.

The judgment is affirmed.

CARLAND, Circuit Judge (dissenting). The alleged libelous article was published in October, 1913, and a portion of the same was an excerpt from a letter of the Assistant Secretary of the Interior. The excerpt charged Johnson with the misuse of government money in the defense of one Cruz. On April 21, 1914, the Acting Secretary of the Interior approved the recommendation of the Commissioner of Indian Affairs that Johnson's account for expenses in the Cruz case be allowed. At the trial counsel for Johnson offered in evidence the record showing this allowance. It was objected to as incompetent, but no exception was taken. Counsel for Robinson, however, requested the court to charge the jury as follows:

"The court instructs the jury that in making up your verdict in this case you will not consider the evidence offered and introduced by the plaintiff that plaintiff's accounts concerning the Juan Cruz trial were passed upon and approved by the Department of the Interior after the publication of the article in question; such accounts being approved during the year 1914."

This request was refused, and an exception taken to the ruling. The record was not admissible on the question of good faith, as it was not in existence when the alleged libel was published. It is said that it was admissible on the question of malice. December 14, 1914, three days before the trial of the case, Robinson filed an amended answer, asserting the truth of the libel. The trial court, in reference to the refusal of the charge requested, charged the jury as follows:

"I may say to you in regard to instruction No. 10 in reference to the review of approval of these accounts of the plaintiff, I have noted the reason on the instruction as to why I did not give it. So far as these matters were transpiring and were matters of public record in the Department of the Interior at Washington when this amended answer was filed, this defendant had notice, or could have had notice, of the public files at Washington at that time, show-

ing what had been done in reference to this matter, before this answer was filed, and it was for that reason I refused it, and it was for that reason alone that I let the testimony in originally. So you will understand my position. If this had all happened after the answer was filed, the testimony would have been clearly incompetent, in my judgment."

The court said in the charge that the defendant had notice, or could have had notice, of the record at the time the amended answer was filed. There was no evidence that the defendant had actual notice of the record, nor was it constructive notice. I am unaware of any rule of law that would have required the defendant to search the records at Washington before amending his answer. Nothing was said to the jury by the court as to the subject concerning which the court held the record to be admissible, and the jury no doubt considered the evidence as bearing either upon the question of good faith in connection with the original publication or as to the falsity of the charge. I think the evidence was clearly inadmissible, and it must have been prejudicial.

For this reason, I think the case should be reversed, and a new trial ordered.