DOROTHY BEDEKOVICH, Plaintiff, *v.* HEARST CORPORATION, Defendant.

Municipal Court of the City of New York, Borough of Manhattan, March 21, 1955.

*Harold B. Lawrence* for plaintiff.

*Harvey L. Lipton* for defendant.

R. MORRIS, J. The alleged libel in this action was an article that appeared in the New York Mirror of April 27, 1954, which bore the headline " Video Widower's Wife Shows Movie Mouse." The story went on to report that a Queens housewife, who had promised a city magistrate four days earlier to forego the late, late show on television to preserve her marriage, appeared in court to complain that her husband had given her a black eye because she had taken the children to a movie. The term " movie

mouse '' was used by the reporter to characterize succinctly the condition of plaintiff's eye and to attribute the cause thereof.

The story also added that the husband had, in the earlier proceeding, appeared in the Magistrate's Court '' to enroll his wife in TV Viewers Anonymous,'' and that he had told the court '' with tears streaming down his cheeks, that his wife watched TV so avidly as to give the impression that the finance company were coming any moment to pick up the set.''

The plaintiff contends that the publication of the story in the New York Mirror caused her humiliation, shame, and that it injured her reputation. She pleaded no special damages.

The defense was privilege in that the paper was accurately and fairly reporting what had transpired in two judicial proceedings in the Magistrate's Court. After all the evidence was in, the defendant moved for a directed verdict on the ground that the publication was not libelous per se and that the plaintiff had not made out a case that should go to the jury.

With respect to the motion that the New York Mirror report was not libelous per se the court has examined the cases bearing on what is libel per se. The law in most instances is well defined.

If there is an attribution of unchastity to a woman, of affliction from a loathsome disease to a man, or if there is a charge that a person is guilty of a crime, or an allegation made that would injure a person in his profession or business, the law holds that no special damages must be proven and the libel is libel per se. There is also a clearly defined category which embraces all imputations of disloyalty to one's country, subversive activity and conspiratorial activity against the United States.

But apart from these categories, which admit of definitive adjudication, there are instances of libel per se which the courts have so found which do not come within these categories. The plaintiff has relied considerably on the case of *Woolworth* v. *Star Co.* (97 App. Div. 525, 526). There the defendant, a newspaper, had published a story alleging that the plaintiff had neglected his wife in the course of sacrificing everything to his passion of making money. The Appellate Division put the libel into the framework of a vice, viz., '' One of the meanest of all vices is the mere love of money, and when a man is accused of being affected by that vice so far as to lose sight of the duty he owes to his wife or to his family, he is made at once contemptible.''

If any rule can be deduced from the cases in this area of libel per se it appears to be that the imputation must carry with it a charge of serious vice, disgraceful behavior, or scandalous

misconduct of such dimensions as to make the proof of special damages unnecessary. Such is not the case here. Nor does this case come within the special instances of libel set forth in the case of *Cohen* v. *New York Times Co.* (153 App. Div. 242, 247).

Furthermore, the defendant was able to establish that every essential fact reported in its publication, the New York Mirror, had indeed transpired before the magistrate's proceedings: The complaint of the husband, the agreement to shut off the television at 11:30, the magistrate's efforts to patch up the family differences, and the wife's complaint against the husband for giving her a black eye. These were the essence of the story. The coloration of the facts, flippant though it was, was by way of fair comment.

In addition, the defendant was able to show that four days earlier the local Long Island press, newspapers with a circulation of 175,000 and 70,000, respectively, had thoroughly aired the domestic difficulties of the Bedekoviches.

The case should not go to the jury, and accordingly, both motions of the defendant are granted.