Conway, Ch. J.
Plaintiff instituted this suit in the City Court of the City of New York against defendant, Ernest Paul Du Frey, as executor under the last will and testament of Florence E. Browne, deceased, seeking damages on a cause of action based upon an alleged testamentary libel. The jury returned a verdict in favor of plaintiff in the sum of $5,000 and the Appellate Term and the Appellate Division have both affirmed unanimously. The appeal to our court is by leave of the Appellate Division (Civ. Prac. Act, § 589, subd. 1, par. [b]).
Plaintiff married the testatrix in Richmond, Virginia, in 1901, and brought her to New York to live. They lived together in *193 this State until 1916 when plaintiff brought an action for divorce against her, based upon her alleged adultery with one Paul Lightfoot. On June 6, 1917, he secured a final judgment of divorce in the Supreme Court, New York County. At all times up to and including the time of the divorce, plaintiff made provision for the support of testatrix and at no time abandoned her. Sometime after the divorce, Florence E. Brown changed the spelling of her last name to “ Browne.”
In 1924 plaintiff married one Myra Brown. At the time of the commencement of this action they were living together at No. 101 Decatur Street, Brooklyn, New York. Plaintiff has been a licensed insurance broker for the past 25 years. He represents a number of insurance companies and has approximately 3,000 clients, many of whom are women. He has been a member of the Concord Baptist Church for a number of years. The church has a membership of over 8,000 members. Plaintiff is also a member of a Masonic Lodge and a life member of the Elks, having passed through all the stations to become Exalted Euler.
On June 22,1951, plaintiff’s former wife, Florence E. Browne, executed her last will and testament which contained the following paragraph:
‘1 Fifth : I am mindful of the fact that I have made no provision for John H. Browne, my husband. I do so intentionally because of the fact that during my life time he abandoned me, made no provision for my support, treated me with complete indifference and did not display any affection or regard for me. ’ ’ The testatrix died on September 26, 1951, and her will was admitted to probate on May 5,1952, in the Surrogate’s Court of New York County on the petition of the defendant executor.
On October 20,1951, the New York Amsterdam News carried the following article on page one:
“HUSBAND DESEBTED HEB; WOMAN BEQUEATHS FOBTUNE TO CHUBCH
To the husband who allegedly treated her with ‘ indifference,’ the late Florence E. Brown, who left an estate of $10,000 directed that he be disinherited. Mrs. Browne who died on Sept. 26, 1951 at her home, 426 Lenox Ave., left almost her entire estate to the Twelfth Church of Christ Scientist of 147 West 123rd St. She directed in her will, filed in Surrogate’s Court, that the church receive the sum of $9,000. She left a bequest of $500 to *194 her sister, Inez Smith of 424 Lenox Ave. Another $500 to Donald Williams of 422 Lenox Ave., who is listed as an infant under 14 years of age.
Leaves Husband Nothing
The husband, John H. Browne of 101 Decatur St., Brooklyn, is mentioned in Mrs. Browne’s will as one who is entitled to none of her worldly possessions.
‘ I am mindful, ’ Mrs. Browne declared in her last testament dated June 11, 1951, ‘ of the fact that I have made no provision for my husband, John H. Browne. I do so intentionally because of the fact that during my lifetime he abandoned me, made no provision for my support, treated me with complete indifference and did not display any affection or regard for me. ’
Ernest Paul Dufrey of 348 Grand Ave., was named executor of the estate by Mrs. Browne.
Under the law of this state a wife cannot disinherit her husband unless he has abandoned her or was guilty of cruel and* inhuman treatment. ’ ’
Thereafter the plaintiff instituted this action.
At the close of plaintiff’s case, counsel for defendant moved* to dismiss “ Solely on one point ”, viz., that the words “ do’ not constitute actionable words per se ”. The motion was' denied. The defendant then rested and renewed “ the same motion.” Thus, the defendant’s motions for a dismissal of the complaint were specifically and unambiguously limited to the claim that the words written by the testatrix in her will were not “ actionable words per se ”. No claim was made that the complaint did not state a cause of action for the reason (1) that the words were not written of and concerning plaintiff; (2) that the act of the executor in offering the last will and testament containing the alleged defamatory matter for probate did not constitute the publication of the alleged libelous matter necessary to complete the tort of libel; (3) that no cause of action based on a “ testamentary libel ” exists or (4)’ that a last will and testament is a part of a judicial proceeding and, as such, must be considered a privileged communication under the rules of law pertaining thereto.
The Trial Judge charged the jury (a) that one may libel another by will; (b) that the probate of the instrument constitutes the publication of the libel; (c) that the words written by the testatrix here were libelous; (d) that the words were *195 written of plaintiff, and (e) that the jury’s function here was to fix damages.
The only one of the above-listed aspects of the charge to which the defendant excepted was “ that part of the charge which tells the jury that the words are libelous because they impute to him bad actions and tend to degrade him * *
On this appeal, defendant seeks a reversal of the judgment in plaintiff’s favor upon the grounds numbered (1) to (4), above, as well as upon the ground that the trial court erred in ruling, as a matter of law, that the testamentary provision in question was libelous.
Under well-established principles, however, the sole issue preserved for appeal by defendant is that of whether the trial court erred in ruling, as a matter of law, that the testamentary provision in question was libelous. Not only did defendant limit the case to that single issue by his restricted motions to dismiss the complaint, but he more emphatically so limited it by taking the single exception to the charge referred to above. Section 446 of the Civil Practice Act provides: “ Exception to the charge given to the jury by the court or any part thereof and to the granting or refusal of requests to charge, shall not be deemed to have been taken unless expresslynoted by the party adversely affected before the jury have rendered their verdict ’ ’
It is well settled that the charge of the Trial Judge, insofar as it is not excepted to, becomes the ‘ ‘ law of the case ’ ’, binding upon the parties, even though it be an erroneous statement of the law of this State (see Buckin v. Long Is. R. R. Co., 286 N. Y. 146; Berner v. Board of Educ., 286 N. Y. 174; Leonard v. Home Owners' Loan Corp., 297 N. Y. 103; McCabe v. Cohen, 294 N. Y. 522; Commercial Cas. Ins. Co. v. Roman, 269 N. Y. 451; Graves v. Rudman, 235 App. Div. 380, appeal dismissed 260 N. Y. 628; Roberts v. Snyder Mfg. Co., 242 App. Div. 244).
It is true that, following the rendition of the verdict, counsel for defendant moved “ to set aside the verdict as being contrary to the facts, contrary to the weight of the evidence, and contrary to the law and on all the grounds specified in Section 549 of the Civil Practice Act including excessiveness.” (Emphasis supplied.) However, that motion does not aid defendant. We are not concerned, in this court, with facts or the weight of the evidence (the only fact left to the jury by the charge was that of damages) and the term “ contrary to the *196 law ” as found in section 549 of the Civil Practice Act does not apply to an error of the court in giving the jury the instructions upon which their verdict is to be based. It has reference to a verdict which the law as charged by the Judge does not authorize the jury to render upon the evidence presented to them. (See 7 Carmody-Wait on New York Practice, § 24.) The act of the Judge in erroneously charging the jury upon the law in the case, although it necessarily results in a verdict not authorized by law, is not an error for which the jury is responsible, but is an error of the Judge, to be pointed out by an exception and if a party fails to take an exception he cannot raise the question upon a motion for a new trial.
Accordingly, we address ourselves to the single question or the “ one point ” presented by this record, viz., whether the words written of plaintiff were libelous as a matter of law.
In Nichols v. Item Publishers (309 N. Y. 596), decided on February 17th of this year, this court reaffirmed the general rule stated in Mencher v. Chesley (297 N. Y. 94, 100) that “ A writing is defamatory — that is, actionable without allegation or proof of special damage — if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community, even though it may impute no moral turpitude to him. ’ ’ Another well-established definition of libel is that found in Sydney v. Macfadden Newspaper Pub. Corp. (242 N. Y. 208, 211-212): ‘ ‘ Any written or printed article is libelous or actionable without alleging special damages if it tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.” And, in Katapodis v. Brooklyn Spectator (287 N. Y. 17), we went further and held that alleged libelous matter is defamatory not only if it brings a party into hatred, contempt or ridicule by asserting some moral discredit upon his part, but also if it tends to make him be shunned or avoided, or deprived of the friendly association of a considerable number of respectable members of the community although it imputes no moral turpitude to him.
In the present case the testatrix charged.that “ during my life time he [plaintiff] abandoned me, made no provision for my support, treated me with complete indifference and did not display any affection or regard for me. ” As we have said, the publica *197 tion of these words must be deemed admitted by reason of defendant’s failure to except to that portion of the charge which so stated, and it is clear to us that the words are unambiguous and admit of but one sense. In Moore v. Francis (121 N. Y. 199, 202-203), we declared: ‘ ‘ It is the settled law of this state that in a civil action for libel, where the publication is admitted and the words are unambiguous and admit of but one sense, the question of libel or no libel is one of law which the court must decide. (Snyder v. Andrews, 6 Barb. 43; Matthews v. Beach, 5 Sandf. 256; Hunt v. Bennett, 19 N. Y. 173; Lewis v. Chapman, 16 id. 369; Kingsbury v. Bradstreet Co., 116 id. 211).” (Emphasis supplied.)
In resolving this question of law in favor of plaintiff we have been guided by the thoughts expressed by a number of jurists in several sister jurisdictions as well as by a consideration of the obligations imposed upon a husband by the law of our State.
Thus, in Thackrey v. Patterson (157 F. 2d 614), the United States Court of Appeals, District of Columbia, wrote (p. 615): “ A mere assertion of marital discord is libelous * * And, in Lyman v. New England Newspaper Pub. Co. (286 Mass. 258), the Supreme Judicial Court of Massachusetts, the highest tribunal in that State, in a libel action brought by a husband and wife, wrote (p. 263):
“ * # * In pagan as well as in religious philosophy, the marriage relation has been idealized. Among the attributes of a high ideal of marriage is harmonious living together. That is a traditional accompaniment and end of successful marriage. The standing in the community of a man and woman joined in marriage who achieve that goal has been in the past, and we think today is, higher than that of a man and woman who have failed to reach it. It forms the basis of the rule which people in general, regardless of the concord and harmony of their own married lives, apply to the marriages of others. We do not think that modern conditions have changed this ideal. The conclusion, in our opinion, is that to say in print of a husband and wife that they have ceased to live together in harmony does some injury to the reputation of each. Woolworth v. Star Co., 97 App. Div. (N. Y.) 525; O'Neill v. Star Co., 121 App. Div. (N. Y.) 849.
“ The fact that the publication alleged to have been made falsely by the defendant did not discriminate and apportion the blame between the husband and wife does not prevent such publication as to matrimonial relations being libellous as to both.”
*198 In Smith v. Smith (73 Mich. 445, 446), the Supreme Court of Michigan wrote, in a libel action brought by a wife where the husband had published in a newspaper, a notice to the effect that “ My wife, Mrs. Henry 0. Smith, deserted me in my sickness, and has informed me I could get another woman, for she had quit. I forbid all persons from harboring or trusting her on my account:
“ The first question raised is whether this notice contains libelous matter per se. We think it does. It charges her with deserting her husband in his sickness. If this charge be true, Mrs. Smith was guilty of the basest ingratitude, and of conduct deserving the contempt of all right-minded people.”
Finally, in O'Neill v. Star Co. (121 App. Div. 849, 851), the Appellate Division, First Department, wrote: “ A charge that a man had such a passion for money making that he neglected his wife is libelous per se. (Woolworth v. Star Company, 97 App. Div. 525.) It is far more serious to state that an action for divorce has been brought upon any ground, for such action implies either neglect of marital obligations or absolute violation of them ” (Emphasis supplied.)
In the case before us, there is more than a ‘ ‘ mere assertion [by testatrix] of marital discord ” between plaintiff and herself. Testatrix charged that her husband, the plaintiff, “ abandoned me, made no provision for my support * * *.” It is clear from the context that the charge made was intended to be understood in a sense derogatory to the plaintiff — that the plaintiff’s conduct toward testatrix was unjustified. The charge was inserted into the will gratuitously. It cannot be said to have been inserted therein so as to justify her having left nothing to plaintiff since the divorce obtained by him severed the marital bond between them and, under the provisions of subdivision 3 of section 18 of the Decedent Estate Law, his right to share in her estate was terminated.
The charge against plaintiff is that he, who, it will be remembered, is a member of an established church which idealizes the marriage relation, has violated both his marriage vows and the law of this State which imposes upon the husband the duty to support and maintain his wife (see Keller v. Phillips, 39 N. Y. 351, 354; 41 C. J. S., Husband and Wife, § 15). The charge leveled against plaintiff must be taken as having been false. The plaintiff testified that it was false and, on this appeal, the defendant *199 does not argue that the charge was true. It may be that, according to some standards, no stigma or odium attaches to a husband who, in disregard of his marital vows, forsakes his wife and refuses to discharge his moral and legal obligations to support her but, to borrow language of this court in Sydney v. Macfadden Newspaper Pub. Corp. (242 N. Y. 208, 212, supra) “ [according to the ordinary standards, still I hope, in vogue among us, a * * * [man] of good reputation would not so conduct * * * [himself], and if * * * [he] did, the natural tendency would be to result in * * * [his] disgrace. Such * * * [a charge] when false, necessarily causes great humiliation and mental anguish.” Such a charge necessarily tends to expose one to public contempt, to induce an unsavory opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society. Such a charge tends to cause one to be shunned, avoided or .deprived of the friendly association of a considerable number of respectable members of the community. Therefore, such a charge is libelous (see Mencher v. Chesley, 297 N. Y. 94, supra; Sydney v. Macfadden Newspaper Pub. Corp., 242 N. Y. 208, supra; Katapodis v. Brooklyn Spectator, 287 N. Y. 17, supra).
The judgment should be affirmed, with costs.
Desmond, Fuld and Burke, JJ., concur with Conway, Ch. J.; Dye and Van Voobhis, JJ., dissent in ihc following memorandum : Regardless of whether a cause of action can be maintained for testamentary libel, a point which is not raised by this record, it was at least incumbent upon plaintiff to prove actual malice and special damages in order to sustain a recovery based upon this allegedly defamatory charge. The judgment should be reversed and the complaint dismissed. Froessel, J., taking-no part.
Judgment affirmed.